UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRUSTEES OF THE BUILDING TRADES
EDUCATIONAL BENEFIT FUND, THE BUILDING
TRADES ANNUITY BENEFIT FUND, BUILDING
TRADES WELFARE BENEFIT FUND and
ELECTRICIAN'S RETIREMENT FUND

                      Plaintiffs,

              -against-

BRIDGE ELECTRIC NJ, LLC, and JOSEPH VINCI,
*Individually,*

                      Defendants.
----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 24-7929 (HG) (ARL)

**LINDSAY, Magistrate Judge:**

This matter was referred to the undersigned by District Judge Gonzalez for the purpose of issuing a report and recommendation on whether the pending motion for a default judgment should be granted and, if so, the appropriate relief to be awarded to the plaintiffs Trustees of The Building Trades Educational Benefit Fund, The Building Trades Annuity Benefit Fund, Building Trades Welfare Benefit Fund and Electrician's Retirement Fund ("Plaintiffs" or the "Funds"). The Complaint names as defendants Bridge Electric NJ, LLC ("Bridge") and Joseph Vinci.[1] Plaintiffs have submitted a proposed default judgment in support of their motion along with the affirmation of Danielle M. Carney, Esq., and affidavits of Kevin Chavarria and Alan Rossi.   A

---

1 On July 14, 2025, Plaintiffs received a Notice of Chapter 13 Bankruptcy for the individual defendant, Joseph Vinci. ECF No. 22-1. Plaintiffs notified the Court on December 9, 2025 that "[o]n December 1, 2025, the United States Bankruptcy Court Dismissed the Vinci Bankruptcy." ECF No. 29, Attorney's Supplemental Affirmation In Support Of Plaintiffs' Motion for Default Judgment ("Supplemental Carney Aff."). "[T]he Plaintiffs are now seeking to recover against the individual defendant, Vinci, unpaid benefit contributions pursuant to two (2) audits as well as corresponding interest, damages and fees owed by the Defendant Bridge as detailed in the initial filings." *Id*. at ¶5.

1

copy of the proposed judgment with supporting papers was served on the defendants, Bridge Electric NJ, LLC ("Bridge") and Joseph Vinci ("Vinci").   Despite having been served with the motion, neither Bridge nor Vinci submitted papers in opposition.   For the reasons set forth below, the undersigned respectfully recommends that Plaintiffs' motion for default judgment be denied as to Defendant Vinci, granted, as against Bridge and Plaintiffs be awarded $56,435.11 in unpaid contributions, $11,287.02 in liquidated damages, $4,597 in audit fees; $5,250 in attorneys' fees and $699.44 in costs. The undersigned further recommends Plaintiffs demand for interest be denied without prejudice.

## BACKGROUND

### I.      Procedural Background

On November 14, 2024, Plaintiffs commenced this lawsuit seeking to recover unpaid contributions and attendant damages allegedly owed by the defendants, Bridge and Vinci pursuant to Section 515 of the Employee Retirement Income Security Act ("ERISA"), as amended 29 U.S.C. § 1145.   ECF No. 1.

Bridge was served with a copy of the summons and complaint by service on Vinci on November 21, 2024.   ECF No. 7.   Vinci was personally served on November 21, 2024.   ECF No. 8.   Bridge and Vinci failed to answer or otherwise respond to the complaint.   Accordingly, on January 28, 2025, Plaintiffs moved for the entry of default as against Bridge and Vinci and, on January 30, 2025, the Clerk of the Court certified Bridge's and Vinci's default based upon their failure to answer or otherwise appear in this action.   ECF Nos. 11 & 12.   Plaintiffs moved for a default judgment on March 3, 2025.   ECF No. 14. The motion was served on Defendants on March 3, 2025.   ECF No. 19-1.   Defendants did not respond to the motion.   Judge Gonzalez

referred Plaintiffs' motion to the undersigned for a report and recommendation.   On July 2, 2025, this Court reported and recommended that Plaintiffs' motion should be denied because Plaintiff failed to allege that demand for payment of the amounts found due by the Audits was made.   Plaintiffs objected to the report and recommendation, conceding that the demand letters had not been provided and submitting them as part of their objections.   On July 30, 2025, Judge Gonzalez "decline[d] to consider the Demand Letters at this stage," adopted the report and recommendation, and allowed Plaintiffs to refile the motion for default judgment by August 19, 2025.

On August 19, 2025, Plaintiffs filed their second motion for default judgment against Defendant Bridge.   ECF No. 23.   The motion was served on Defendant Bridge on August 19, 2025.   ECF No. 28.   On the same day, Judge Gonzalez referred Plaintiffs' second motion for default judgment as to Bridge to the undersigned.   Defendant Bridge did not respond to the motion.

On December 9, 2025, Plaintiffs filed the Supplemental Carney Aff., Supplemental Memorandum of Law, and revised Proposed Default Judgment. ECF Nos. 29 & 30. The papers were served the same day.   ECF No. 31-1. According to the Supplemental Carney Aff., "[o]n December 1, 2025, the United States Bankruptcy Court Dismissed the Vinci Bankruptcy. . . . Accordingly, the Plaintiffs are now seeking to recover against the individual defendant, Vinci, unpaid benefit contributions pursuant to two (2) audits as well as corresponding interest, damages and fees owed by the Defendant Bridge as detailed in the initial filings."   ECF No 29, ¶¶ 4, 5. Vinci has not responded to the motion.

Plaintiffs seek an award as against both Bridge and Vinci in the amount of $56,435.11 in

3

unpaid contributions, $11,287.02 in liquidated damages, audit fees of $4,597, audit interest of $6,617.00, $699.44 in costs and $5,250.00 in attorneys' fees for a total of $84,885.57.   ECF No. 31, Proposed Order.   As noted above, in support of the motion, Plaintiffs submitted the affirmation of Danielle M. Carney, Esq., and affidavits of Kevin Chavarria and Alan Rossi. ECF Nos. 24-26.   Plaintiffs also submit the Supplemental Carney Affirmation. ECF No. 29.

## II.    Factual Background

The following facts are taken from the complaint as well as the motion for default judgment and the exhibits attached to the motion.

Plaintiffs are the trustees and plan sponsors of an employee benefit plan or fund within the meaning of Section 3(21)(a) of ERISA, 29 U.S.C. §§ 1002(21)(a).   Compl. ¶ 5.   The Funds are established and maintained pursuant to the terms of the Collective Bargaining Agreements and Trust Indentures.   *Id.*   The Funds are employee benefit plans within the meaning of Sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. Section 1002 3(1), 3(2), and 3(3) and 1132(d)(1) and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. Sections 1002(37) and 1145).   *Id.*

Bridge was a party to and bound by two collective bargaining agreements ("CBA") with the United Electrical Workers of America IUJAT, Local 363, "by virtue of membership in the Building Industry Electrical Contractors Association ("Association") and through agreements made in connection with the Association ("Agreements")." *Id*. at ¶ 12; *see* Chavarria Aff. ¶ 1. The first is for the period July 1, 2016, to November 30, 2019 and the second for the period December 1, 2019, to November 30, 2022. Pursuant to those agreements, Bridge was obligated to pay contributions and submit remittance reports to the Plaintiffs on behalf of its employees

who were covered by the agreements. Chavarria Aff. ¶ 2. The CBA for the period July 1, 2016, to November 30, 2019 provides:

> The EMPLOYER agrees that if contributions to the FUNDS are not made when due, then in addition to paying the contributions owed, the EMPLOYER shall also pay the FUNDS (a) interest on delinquent contributions calculated at the prime rate as stated in Federal Reserve Statistical Release on the date contributions are due plus two percent (2%), (b) liquidated damages equal to 20% of the delinquent contributions, and (c) all costs of collecting the payments due, including without limitation, attorneys' fees and disbursements.

*Id*. at Ex. A, CBA at 16 (e). This same language is repeated in the CBA for the period December 1, 2019, to November 30, 2022. *Id*. at Ex. B, CBA at 21(e).

In the Complaint, Plaintiffs allege that defendant Vinci was an officer, agent, partner and/or principal owner of Bridge and is personally and individually obligated to assume all obligations of Bridge. Compl. ¶10. The Complaint also alleges, entirely upon information and belief, that Vinci controlled and dominated the affairs of the Employer and carried on the business of Employer for his own personal ends, *id*. ¶ 48, had managerial discretion and control over the Employer and made all decisions on behalf of Employer; signed contracts governing the Employer; signed checks for Employer and made all decisions concerning payments by the Employer, *id*. at ¶49, determined which creditors Employer would pay; determined when the Plaintiffs' Funds would be paid; determined how much money would be paid to the Plaintiffs' Funds and exercised control over money due and owing to the Plaintiffs' Funds, *id* at ¶ 50, and commingled assets of the Plaintiffs' Funds with the Employer's general assets and used the Plaintiffs' Funds' assets to pay other creditors of the Employer rather than forwarding the assets to the Plaintiffs' Funds. *Id*. at ¶ 51.

In 2020, Plaintiffs brought an action against Bridge and Vinci for a failure to remit fringe

benefit contributions of $56,252.47 as the result of an audit dated October 1, 2016 through September 30, 2019, plus interest, fees, liquidated damages.2  *Trustees of Bldg. Trades Educ. Benefit Fund v. Bridge Elec. NJ, LLC*, No. 20-CV-3376 (DRH) (ARL).   While Defendants did not appear in that action either, the matter was ultimately settled, and Plaintiffs voluntarily withdrew the action.

Here, Plaintiffs allege that Bridge has failed to pay the contributions due to the Funds on behalf of covered employees for the period of October 1, 2019, through to June 30, 2022, and July 1, 2022, through to November 30, 2022.   In the Complaint, Plaintiffs seek "fringe benefit contributions due and owing under the CBA Agreements and in accordance with the Trust Indentures in the minimum amount of $34,812.37 owed for the period of October 1, 2019, through June 30, 2022, as the result of an audit and $1,364.55 from August 2022 to October 2022 for a total of $36,176.92."   Compl. ¶ 15.

These amounts were derived, in part, from an audit for the period October 1, 2019, to June 30, 2022, ("First Audit"). Rossi Aff. ¶7. According to the First Audit, Bridge owed delinquent contributions in the amount $34,812.37; interest in the amount of $4,724.00 and accounting fees in the amount of $3,505.00. *Id*. Rossi notes that he "did not receive a request from Bridge to refund the overpaid amounts stated in the audit." *Id*. On December 19, 2022, a demand letter was sent to the Defendants by regular and certified mail demanding payment of

---

2 The court can take judicial notice of this action.  *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings") (quoting *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc*., 969 F.2d 1384, 1388 (2d Cir. 1992)); *Veg-Mix, Inc. v. U.S. Dept. of Agriculture*, 832 F.2d 601, 607, 266 U.S. App. D.C. 1 (D.C. Cir. 1987) ("Courts may take judicial notice of official court records . . . .") (citing *Freshman v. Atkins*, 269 U.S. 121, 123-24, 46 S. Ct. 41, 70 L. Ed. 193 (1925); *In re Aughenbaugh*, 125 F.2d 887, 890 (3d Cir. 1942)).

the amounts found to be due by the auditor for the First Audit. Carney Aff. at ¶10. Plaintiffs did

not receive from the Defendants the amounts demanded in the December 19, 2022 letter.

The Complaint also alleges that Defendants have refused to allow an audit for the period

of July 1, 2022, through November 30, 2022. *Id*., at ¶ 29. As noted in the Carney Aff., prior to

the filing of the complaint, this audit was completed. Carney Aff. ¶7, n.1. The second audit is

for the period July 1, 2022, to November 30, 2022, ("Second Audit"), with delinquent

contributions in the amount $21,622.74; interest in the amount of $1,893.00 and accounting fees

in the amount of $1,092.00. Carney Aff. ¶¶12. On February 23, 2023, a demand letter was sent to

the Defendants by regular and certified mail demanding payment of the amounts found to be due

by the auditor for the Second Audit. Carney Aff. ¶¶13, 14. Plaintiffs did not receive from the

Defendants the amounts demanded in the February 23, 2023 letter.

The Carney Aff. seeks "judgment for benefit fund contributions for the period October 1,

2019, to November 30, 2022, is $56,435.11 pursuant to audit with the interest attributable thereto

in the total amount of $6,617.00; audit fees of $4,597.00; $11,287.02 in liquidated damages plus

$5,250 in attorney's fees and $699.44 in costs and fees for a total of $84,885.57." *Id*. ¶ 17; *see*

*also* Chavarria Aff. ¶ 5. Both rely on the Rossi Aff. that attaches audit results for the period in

question.

**DISCUSSION**

A.    **Legal Standard Governing Defaults**

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default

judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a

default judgment is made to the district court judge. A default constitutes an admission of all

7

well-pleaded factual allegations in the complaint, except those relating to damages.   *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.,* No. 06-CV-1878, 2007 WL 2891016, at \*2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true").   However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims.   *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted); *CIT Bank, N.A. v. Dambra,* No. 14 Civ. 3951, 2015 WL 7422348, at \*5 (E.D.N.Y. Sept. 25, 2015) ("On a motion for default judgment, the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion."), report and recommendation adopted by, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015).   A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).   The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159.

### B. Analysis

ERISA requires employers to pay fringe benefit contributions pursuant to a valid collective bargaining agreement.   29 U.SC. § 1145.   Specifically, the statute states that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.   Here, Plaintiffs have asserted that Bridge entered into a CBA with the Union and failed to remit benefit contributions owed pursuant to two audits for the period October 1, 2019, to November 30, 2022. *See* ECF No. 31, Proposed Order. In support of the motion for default, Plaintiffs rely upon the Affidavits of Rossi and Chavarria. ECF Nos. 25 & 26. Plaintiffs have sufficiently set forth the elements of a claim for liability under ERISA against Defendant Bridge.

Plaintiffs also seek to hold Joseph Vinci personally liable for the unpaid contributions owed by Bridge.   As a general matter, a corporate employer does not have a fiduciary obligation to make trust fund contributions; rather that obligation is contractual.   *Sasso v. Cervoni,* 985 F.2d 49, 51 (2d Cir. 1993) (citing 29 U.S.C. § 1002(21)(A)); *see also Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir. 1994); *Flanagan v. T.R. Whitney Inc*., CV 19-0415 (JS) (AKT), 2020 U.S. Dist. LEXIS 158461 (E.D.N.Y. Aug. 26, 2020) (citation omitted).   Thus, absent special circumstances, an individual owner or officer "is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager." *Id*. at 50; *see also Trustees of the United Plant v. C.P. Perma Paving Constr., Inc.*, No. 15-CV-1171, 2016 U.S. Dist. LEXIS 30053, 2016 WL 1029507, at *2 (E.D.N.Y. Mar. 9, 2016) ("Absent 'special circumstances,' individual officers are not personally liable for unpaid benefit contributions that should have been made by corporations under ERISA.") (quoting *Solomon v. R. Mignon & Sons, Inc*., No. 94-CV-1344, 1994 U.S. Dist. LEXIS 14024, 1994 WL 538617, at *2 (S.D.N.Y. Oct. 3, 1994)).   Generally, a director or officer "is not personally liable

for is corporation's contractual breaches unless he assumed personal liability, acted in bad faith or committed a tort in connection with the performance of the contract."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993).   Plaintiffs have not alleged any special circumstances which would allow Vinci to be held personally liable for the debts of Bridge.

"Section 409 of ERISA, 29 U.S.C. § 1109, provides an independent basis for [defendant's] liability in his individual capacity as a 'fiduciary.'"  *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015).   "To establish the personal liability of a fiduciary, a plaintiff must show 'both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him [or her] a fiduciary.'" *Bricklayers Ins. & Welfare Fund v. Job Opportunities for Women, Inc.*, No. 16-CV-6935 (PKC)(JO), 2019 U.S. Dist. LEXIS 13220, 2019 WL 343243, at *3 (E.D.N.Y. Jan. 28, 2019) (quoting *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009)).

Plaintiffs argue that the unpaid contributions were plan assets. Pl. Supplemental Mem. at 3.   According to Plaintiffs, the applicable collective bargaining agreement states:

> Employer contributions become vested plan assets at the time they become due and owing to the above-referenced Fund. All contributions from an Employer shall, after their due date and until payment in full by the Employer to the Funds, be deemed to constitute plan assets of a trust fund in the possession of such Employer.

*See* Chavarria Aff. Ex. A, at 14, Ex. B at 18.   Plaintiffs argue that this language is sufficient to create an exception to the general rule and makes the unpaid contributions are assets of the plan. Pl Supplemental Memorandum of Law at 3 (*Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015)); *see also Bricklayers Ins. & Welfare Fund v. Inniss Constr., Inc.*, No. 19-CV-7094 (DLI) (LB), 2021 U.S. Dist. LEXIS 193357, at *11, 2021 WL 7208994 (E.D.N.Y. Oct. 5, 2021) ("An agreement between an

employer and employees specifying that contributions presently owed to a fund will be considered held in trust for the employees is sufficient to render the unpaid contributions 'plan assets' protected by ERISA")

Next, the Court must consider whether Vinci exercised a sufficient level of control over the unpaid contributions to make him a fiduciary. "Congress intended ERISA's definition of fiduciary to be broadly construed." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997). "ERISA's definition of a fiduciary is 'functional,' and, as relevant here, focuses on whether a defendant 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets' or 'has any discretionary authority or discretionary responsibility in the administration of such plan.'" *Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, No. 19-cv-2600 (ERK) (RLM), 2021 U.S. Dist. LEXIS 163963, 2021 WL 3861762 (E.D.N.Y. Aug. 30, 2021) (quoting 29 U.S.C. § 1002(21)(A)(i), (iii)). A defendant is not a fiduciary merely because he served as an officer of a company employing union members. *Finkel,* 577 F.3d at 86 (citing *LoPresti*, 126 F.3d at 40); *Sullivan v. M.A.C. Design Corp.*, 14-CV-1846 (NGG) (VVP), 2015 U.S. Dist. LEXIS 124465, 2015 WL 5518456, at *3 (E.D.N.Y. Sept. 17, 2015) ("Fiduciary status derives from an individual's actions in connection with an employee benefits plan, and not merely from the position he holds within a company"). "Nor is it sufficient that a defendant was authorized to sign company checks and was generally aware that benefit plans were supposed to be funded through employee deductions." *Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, 2021 U.S. Dist. LEXIS 163963, at *9;3 *see also Finkel*, 577 F.3d at 86-87 (finding

---

3  In *Alpha Omega*, the Court found the individual was a fiduciary because "sole owners who are also corporate presidents are fiduciaries under the functional test because 'it is apparent that only he could decide when to make contributions to the benefit funds, and how much to contribute.'" *Id.* (quoting *Sheet Metal Workers' Nat'l Pension Fund v. Vardaris Tech, Inc.*, 13-CV-5286 (ARR), 2015 U.S. Dist. LEXIS 144803, 2015 WL 6449420, at *6

defendant "was simply an officer of [the company]" where "he signed checks on the company's behalf, and . . . maintained plan assets," but did not "select investments[,] exchange one instrument for another[,] . . . was [not] responsibl[e] for determining which of the company's creditors would be paid or in what order, . . . or otherwise enjoy[ed] authority or control over the management of [the] Plan assets"); *Trs. of Plumbers Local Union No. 1 v. Dan Yant, Inc.*, No. CV 06-0173 (SJ)(JO), 2007 U.S. Dist. LEXIS 99436, at *12 (E.D.N.Y. Sept. 24, 2007) (declining to impose individual liability on corporate principle that signed the CBA because "a corporate officer or other agent who 'signs an agreement on behalf of a disclosed principal' is 'not individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal").

Here, in the Complaint, Plaintiffs offer only unsupported legal conclusions which track the language of relevant case law to demonstrate that Vinci exercised a level of control over the assets sufficient to make him a fiduciary. *See, e.g.,* ¶¶ 12, 48-52, 61. Plaintiffs allege that "[u]pon information and belief, the Defendant, Joseph Vinci . . . is/or was an officer, agent, partner and/or principal owner of Bridge" and "[u]pon information and belief, [Vinci] owned, controlled and dominated the affairs of the Employer and carried on the business of Employer for his own personal ends." *Id*. at ¶¶12, 48. However, no facts are alleged indicating Vinci's relationship to Bridge.   The Court need not accept conclusory allegations of control, entirely unsupported by a factual basis.   *See Trs. of the Rochester Laborers' Welfare-S.U.B. Fund v. Sorce,* 739 F. Supp. 3d 23, 30 (W.D.N.Y. 2024) ("Plaintiffs simply allege in a conclusory manner that Defendant 'exercised his authority or control over vested Plan assets when he paid other expenses rather

---

(E.D.N.Y. Oct. 23, 2015)).

than contributions.' . . . These allegations are too thin, even with Defendant's default, to support a conclusion that Defendant exercised sufficient control over the funds at issue to make him personally liable as a fiduciary for [defendant's] delinquent benefits contributions. To meet the threshold for establishing personal liability, Plaintiffs must provide further support for the fact-intensive inquiry as to how Defendant controlled, handled, and/or used the specific funds at issue during the relevant time period"); *Unite Here Ret. Fund v. Edward Vill. Grp.*, LLC, 21-cv-2141 (LJL), 2021 U.S. Dist. LEXIS 220361, 2021 WL 5279405 (S.D.N.Y. Nov. 12, 2021) (refusing to enter default judgment because "Plaintiffs have alleged no facts regarding Defendants' ownership that would establish that the two belong to a 'control group' under the applicable statutes, nor have they pointed to any information incorporated into the Complaint that supports the conclusory allegations"); *Division 1181 Amalgamated Transit Union-N.Y. Emps.' Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 618-19 (E.D.N.Y. 2017) (declining to enter default judgment against alleged controlling party because "even in the context of a default judgment, it is the plaintiff's burden to demonstrate that the uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action"). Moreover, "[w]hile courts may accept allegations made on information and belief 'where such allegations state facts primarily within the defendant's knowledge,' conclusory allegations made on information and belief 'are generally insufficient to support a finding of default-based liability.'" *Lancesoft, Inc. v. Cowie*, No. 3:22cv968 (JBA), 2023 U.S. Dist. LEXIS 233089, 2023 WL 9196700 (D. Conn. July 21, 2023) (citing *Trustees of Bldg. Trades Educ. Benefit Fund v. Petry*, No. CV204617RPKARL, 2021 U.S. Dist. LEXIS 244785, 2021 WL 7908053, at *3 (E.D.N.Y. Dec. 22, 2021)).

In their Supplemental Memorandum of Law in Support of an Award of Damages,

Plaintiffs argue that "[p]ursuant to the Assumption Agreement (signature page),Vinci is a partner of Bridge which provides proof of her [sic] substantial role in Bridge's affairs." ECF No. 30 at 4. First, the Court notes that while Vinci signed the Assumption Agreement as "partner," Bridge is an LLC and "an LLC is comprised of members and not partners." *Olinsky & Assocs., PLLC v. Nutting*, No. 5:20-cv-1142, 2021 U.S. Dist. LEXIS 124704, *13, 2021 WL 2779001 (N.D.N.Y. July 2, 2021). Thus, this designation as partner provides no evidence of Vinci's role at Bridge. Next, Vinci's signature on the assignment agreement in not enough to make him a fiduciary for ERISA purposes. *See Sorce,* 739 F. Supp. 3d at 32 (refusing to find individual liability based upon designation of "owner" next to signature on CBA); *Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Local Union No. 71 v. Lovejoy Metals, Inc.*, 495 F. Supp. 3d 174, 195-96 (W.D.N.Y. 2020) (refusing to find president of corporation personally liable for its unpaid benefit contributions on the basis that he was the corporation's signatory to a CBA with the union). Accordingly, in light of the absence of facts establishing Vinci's ownership interest in Bridge and his control of Plan assets the undersigned respectfully recommends that Plaintiffs' motion for default judgment as to Defendant Vinci be denied.

## III.    Damages

ERISA provides a right of recovery to plaintiffs who have established liability under Section 515 for unpaid contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as the court may deem appropriate.   29 U.S.C. § 1132(g)(2).   In support of their request for an award of damages, Plaintiffs have submitted the following documents (1) Affirmation of Danielle M. Carney of Barnes, Iaccarino & Shepherd, LLP counsel to Plaintiffs dated August 19, 2025; (2) Affidavit of Kevin Chavarria dated August 18, 2025; (3) Affidavit of Alan Rossi, auditor, dated August 15, 2025 and (4) a Memorandum of

14

Law dated August 19, 2025.   The Court will determine damages based on the documentary evidence.

### A.      Unpaid Contributions

ERISA section 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), provides for an award of unpaid contributions by Defendant.   The Trust Agreement does as well.   Plaintiffs request unpaid contributions in the amount of $56,435.11 based upon audits. Chavarria Aff. ¶¶ 3,4; Rossi Aff. ¶¶ 7-9, 15. An audit report provides sufficient proof of damages for unpaid fringe benefit contributions. *Trs. of the Operative Plasterers' & Cement Masons' Int'l Ass'n Local 262 Welfare Fund v. Emerald Drywall Finishing Corp.*, No. 14-CV-4631 (JGK) (JLC), 2015 U.S. Dist. LEXIS 100467, 2015 WL 4621534 (S.D.N.Y. July 31, 2015). Plaintiffs have submitted two audit reports establishing that Defendant has failed to make contributions to the funds for the periods October 1, 2019, through to June 30, 2022, and July 1, 2022, through to November 30, 2022. Rossi Aff., Exs. A & B. In the Complaint, Plaintiffs seek to recover $34,812.37 owed for the period of October 1, 2019, through June 30, 2022, as the result of an audit and $1,364.55 from August 2022 to October 2022 for a total of $36,176.92. ECF No. 1 at ¶15. As discussed above, subsequent to the filing of the Complaint a second audit for the period July 2022 through November 2022 as completed. The First Audit identifies delinquent contributions in the amount $34,812.37 for the period October 1, 2019, to June 30, 2022. Rossi Aff. ¶7, Ex. A. The Second Audit, which was completed after the filing of the Complaint, seeks to recover contributions in the amount $21,622.74 for the period July 1, 2022, through to November 30, 2022. Rossi Aff. ¶8, Ex. B. Accordingly, the undersigned recommends Plaintiff's be awarded $56,435.11 in unpaid contributions.

### B.      Interest on Unpaid Contributions

ERISA section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), mandates an award of interest on unpaid contributions.   The statute provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [the Internal Revenue Code of 1986.]"   29 U.S.C. § 1132(g)(2).   Here, pursuant to the CBA's collection policy, interest on the delinquent contributions accrues "beginning on the Contribution Due Date" and is calculated "at the prime rate as stated in the Federal Reserve Statistical Release . . . and applicable on the Contribution Due Date plus two percent (2%)." Rossi Aff., Ex. C at 3. Interest is calculated "from the Contribution Due Date, per month, until the date paid." *Id*.   This formula suggests that interest is calculated and compounded on a monthly basis, on the date each month that a contribution is due but goes unpaid. Plaintiffs have not provided the formula used for their calculation of interest in the amount of $6,617.00 other than statements in the Rossi Affidavit that "[t]he interest for the audit period of October 1, 2019, through to June 30, 2022, is $4,724.00. The interest was calculated by using the prime rate plus two percent (2%) for the month the contributions were owed and compounded monthly," Rossi Aff. at ¶10, and "[t]he interest for the audit period of July 1, 2022, through to November 30, 2022, is $1,893.00. The interest was calculated by using the prime rate plus two percent (2%) for the month the contributions were owed and compounded monthly." Rossi Aff. ¶ 11. Given that the auditor has failed to provide the methodology used to derive the interest calculations, the undersigned respectfully recommends the request for interest on unpaid calculations be denied without prejudice.   *See, e.g., Tr. of Bldg. Trades Educ. Benefit Fund v. Culver Elec., LLC*, No. 17-CV-3448, 2020 U.S. Dist. LEXIS 207550, 2020 WL 6927618, at *4 (E.D.N.Y. Nov. 3, 2020), report and recommendation adopted in part, No. 17-CV-3448, 2020 U.S. Dist. LEXIS 219976, 2020 WL 6902364, at *1 (E.D.N.Y. Nov. 24, 2020); *Jacobson v.*

*Action Elevator, Inc.,* No. 03-CV-2476 (ARR) (CLP), 2007 U.S. Dist. LEXIS 101347, at *11, 2007 WL 1011173 (E.D.N.Y. Mar. 30, 2007).

### C.   Liquidated Damages on Unpaid Contributions

ERISA section 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C) and the CBA allow for an award of liquidated damages provided for in the plan not to exceed 20% of the unpaid contributions. Here, based on the unpaid contributions determined to be due and owing pursuant to the First and Second Audits, the Funds are entitled to liquidated damages in the amount of $11,287.02, which is equal to 20% of the unpaid contributions, and greater than the interest on the unpaid contributions. Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $11,287.02 in liquidated damages on unpaid contributions.

### D.   Audit Fees

As noted above, the Funds' auditors conducted two audits of Bridges' books and records for the period October 1, 2019 November 30, 2022. Rossi Aff., Exs. A & B. In his affidavit, the auditor confirmed that the auditor's fee for October 1, 2019, through June 30, 2022, was $3,505.00 and the auditor's fee for July 1, 2022, to November 30, 2022, was $1,092.00. Rossi Aff. ¶¶ 12, 13. Audit fees are available under Section 1132(g)(2)(E) of ERISA, which provides for "such other legal or equitable relief as the court deems appropriate." *See Martone v. HST Roofing, Inc.*, No. 03 CV 4165, 2007 WL 595054, at *4 (E.D.N.Y. Feb. 22, 2007) (awarding audit fees).   Thus, undersigned respectfully recommends that audit fees in the amount of $4,597 be awarded to Plaintiffs.

### E.   Attorneys' Fees and Costs

Finally, 29 U.S.C. § 1132(g)(2) and the Trust Agreement also provide for an award of attorneys' fees and costs.   As a general matter, in determining appropriate attorneys' fees, the

"starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product

of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v.*

*Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme

Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable

number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting

*Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d

Cir. 2008)).   The Supreme Court held that "the lodestar method produces an award that roughly

approximates the fee that the prevailing attorney would have received if he or she had been

representing a paying client who was billed by the hour in a comparable case."   *Perdue v. Kenny*

*A. Ex rel. Winn*., 559 U.S. 542, 551 (2010) (emphasis in original).   "The lodestar figure includes

most, if not all, of the relevant factors constituting a 'reasonable attorney's fee."   *Id*. at 553

(citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184,

190-91 (holding a court determines a "presumptively reasonable fee" by considering case

specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client

would be willing to pay," and then multiplying that rate by the number of reasonable hours).

This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to

spend the minimum necessary to litigate the case effectively."   *Arbor Hill Concerned Citizens*

*Neighborhood Assoc*., 522 F.3d at 190.   The reasonableness of hourly rates are guided by the

market rate "[p]revailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation," *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984),

and the relevant community is generally the "district in which the court sits," *Polk v. New York*

*State Dep't of Corr. Servs*., 722 F.2d 23, 25 (2d Cir. 1983).   Moreover, "[t]he burden is on the

party seeking attorney's fees to submit sufficient evidence to support the hours worked and the

18

rates claimed," *Hugee v. Kimso Apartments, LLC,* 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011).   Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances."   *Perdue*, 559 U.S. at 552.

Plaintiffs seek $5,250 in attorneys' fees and $699.44 in costs and have submitted copies of their counsel's contemporaneous time records, reflecting time spent, activities performed as well as costs incurred.   *See* Carney Aff. Ex. F.   The records reflect that plaintiffs' firm spent a total of 21 hours working on this matter.   The work was performed by Danielle M. Carney, an attorney with more than 20 years of experience prosecuting claims on behalf of various ERISA benefit funds, who billed at a rate of $250.00 per hour.   The Court finds this rate to be consistent with the rates awarded in this district in ERISA cases.   Having determined the reasonable hourly rates to be used in this case, the Court now turns to the reasonableness of the hours billed. Courts uphold fee requests in ERISA cases when they determine that the amount of time expended was not "excessive, redundant or otherwise unnecessary."   *Trustees of the Metal Polishers Local 8 A-28A Funds, v. Superiro Scaffolding Serv. Inc.*, No. 12-CV-4251, 2013 WL 4095495, at \*4 (E.D.N.Y. Aug 9, 2013).   In this case, Plaintiffs' counsel expended a total of 21 hours on this matter, which the Court finds to be reasonable.   Accordingly, the undersigned recommends that Plaintiffs be awarded attorneys' fees in the amount of $5,250.   In addition, Plaintiffs seek costs of $699.44, comprised of $299.44 for process of service and $400 for filing fees. Charvarria Aff., Ex. D, statementof damages.   The undersigned recommends that plaintiffs be awarded $699.44 in costs.

## OBJECTIONS

19

A copy of this Report and Recommendation is being electronically filed on the date below.   Counsel for Plaintiffs shall serve a copy of this Report and Recommendation on the Defendants upon receipt and shall file proof of service with the Court.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
            January 21, 2026

                                                    _____/s/_____
                                                    ARLENE R. LINDSAY
                                                    United States Magistrate Judge

20